time we have sat together. It probably is about time to hear this case. You probably think attorneys out there, as a matter of disclosure, I escorted one of the council into the courtroom earlier, but we had no conversation about the case. So let us begin. This is Toshio Williams at all versus Boeing. We'll hear from the appellate. Thank you for the opportunity to be here. We agree. It's more than time to resolve this, and we're happy for you to help us do that today. As the court knows, my client is Frank Williams. He worked for many years out of the issue assembly facility in New Orleans East, and it eventually passed away from mesothelioma. During that time, he worked first for Chrysler and then for Lockheed Martin Corporation. As the court knows, this case was removed to federal court and then consolidated at the Eastern District of Pennsylvania, where summary judgment was granted to all of the defendants. And so we're back before you appealing those summary judgments. Since that time, this court has addressed two of the other defendants. We enjoyed addressing the big issue in bank and then the other issues. We appreciate that, Your Honor. Thank you. So first, I'd like to address how this case is different. This specific... Let me explain a few things, procedures, to make sure I have a sense of this. Last time Eastern District or whatever district, Pennsylvania District Court dealt with this was 2014. Yes, Your Honor. Those others, that was 2014. And then, so there'd been no further proceedings up there. It was then remanded back to the Eastern District, and then we had that procedural issue that took a while to resolve. Longer than it should have, but here we are. Proceed. Yes, sir. So as the court knows, both Lockheed... The dismissals on summary judgment of both Lockheed Martin and what I'll call the supplier defendants of Taylor, Seidenbach, and McCarty were both upheld by this court, which begs the question, of course, how this defendant is different. And it is different in many important ways. In fact, I'll suggest that this court's finding and the finding of the Eastern District of Pennsylvania on summary judgment are enough to demonstrate that Boeing should not have been dismissed by summary judgment. First, Lockheed Martin was dismissed because Mr. Williams was an employee of Lockheed Martin, and this was a case where he was exposed to asbestos while at Michoud, but that we had failed in time to demonstrate that he had been exposed before the inception of the Louisiana Workers' Compensation Act in 1975. So because he had started work before that, but we had failed to demonstrate that specific time issue, we were unable to proceed against Lockheed Martin in tort, and his sole remedy had been under the Louisiana Workers' Compensation Act. This plaintiff never worked for Boeing, therefore that specific exemption does not apply. Secondly, in the supplier defendant case, the court found that, again, there was evidence of exposure. However, we were unable to make the specific finding that those two supplier defendants were the suppliers of the asbestos to which Mr. Williams was exposed. This is completely different from the position of Boeing, who at the time had, and of course the Eastern District of Pennsylvania is probably less familiar with this civilian concept of guard. You're not the only ones unfamiliar with it, but you instructed me. No offense meant to the folks in Pennsylvania, of course, but we do have this very specific concept where in Louisiana, if someone has custody, care, and control of a thing, for instance, if you are the facilities manager of the Michoud Assembly Facility for 20 or so years, including millions of square feet of enclosed areas and 20-something buildings, and you have both contracts and subcontracts for many, many years, and you are the exclusive facilities responsible for all of the facilities, you are not only responsible for each specific supplier's asbestos, you are responsible for all of the asbestos. You assume responsibility for that, and because this case arises before 1996, it's a strict liability case in which we are able, as long as we're able to demonstrate that Boeing had care, custody, and control, which Louisiana courts have already found that Boeing was the facilities manager, and that... What is the closest case you have, Louisiana, that has applied this civil law concept to something like this? Well, there are other facilities cases, of course, like this. I believe a couple of the Huntington Ingalls cases, I would have to get the specific citation, Your Honor. That was the doctrine that was used there, and it was for something like asbestos. Yes, Your Honor. As long as you're found to have care, custody, and control, that does not mean that you have to have ownership. It does not mean that you have to be a lessor. It can be applied to a repairman. It can be applied to a use of fructuary. Any time in which the person has care, custody, and control, and that is determined by whether or not you receive a benefit from the thing, and you're able to exercise authority over the thing. And pursuant to these contracts, we find that... You'll find that Boeing did that. We have an excellent example of what Boeing did under these contracts, which are... Counsel, before we get to that, did Mr. Williams work anywhere else, let's say, between the years of... I think the operative time is 1974 to 93, if I'm not mistaken. There was one two-year period where he worked. 78 to 80, and he worked elsewhere. And then specifically at the MAF, was he assigned... There was some discussion in here about building 350, and that he, at times, migrated different places. Does that make any difference, or what was the percentage of his time spent at building 350, or... His co-worker testified that he primarily worked in building 350. His office was always located in building 350. He often visited building 351 for lunch, which was the cafeteria. Importantly, both of those facilities had, inside of the air conditioning system, this spray-on foam insulation, which later surveys prove was delaminating the inside of the... And it was full of asbestos. So, all of this friable asbestos was inside the air conditioning system, which the Eastern District of Pennsylvania specifically found that inside... Everyone inside building 350 would have been exposed to the same air conditioning system, would have been exposed to the same conditions. And our expert, Frank Parker, said that those... Uniquely, actually, we have, from 1984, so right at the end of Boeing's tenure, some air monitoring data and some data about the condition of... Is there in the record any indication of co-workers who were also subjected, making claims, or at least suffering from the illness? Your Honor, there are other cases in which people have... For instance, the Adato case was one in which Mrs. Adato also passed from mesothelioma, also working in building 350 at Michoud. I don't know of any of his co-workers. Did Mr. Williams at any point give a statement or anything that is in the record? Yes, Your Honor.  He gave a deposition. He was already quite ill at the time, so it's of limited usefulness. He made two different assertions at the time. One was that he was an office worker for all of this time. He also mentioned that he had seen workers in moon suits walking around, which we interpreted to mean like those white Tyvek suits. Everyone agreed. Remediation type. Right, for mediation, but had never seen any place where the remediation had been sheltered off from him. And at that time, there was a thought that perhaps some of the asbestos, this was before we were aware that the buildings were full of asbestos, and particularly that limpet in the air conditioning system, that there might have been asbestos in the external fuel tanks that he might have been exposed to. So he did talk about the rockets, but we're no longer making that claim at all because we've since discovered that there was no asbestos in there, though it might have been helpful. This is really a premises claim, particularly about the air conditioning system and the building materials, which were degrading over time, and which we have evidence were degrading over time, which we also have evidence that at the end of Boeing's tenure, the air quality in the buildings was quite bad. And the reason for that was this deterioration. And our expert testified that unless there had been remediation, the air quality could not have been, have not gotten any better. And there was never any assertion that there was any remediation. Seems like we have a great deal of evidence then. I know one of the issues raised here relates to discovery, reopening discovery. What specifically would you need in terms of discovery? Well, Your Honor. Especially given that the claim is a pre-1996 claim, which is a lower burden for the plaintiff. Unfortunately, we never did receive any discovery from Boeing due to the timing. We discovered that Boeing was this lessee at the end of the discovery period when we finally were able to access this sort of old repository of documents out of mission. Immediately thereafter, we added Boeing to the case. There was a small procedural issue where Boeing was dismissed from the case for a short period during which time discovery was pending. And as soon as they were, discovery ended before Boeing was, that motion to dismiss was reconsidered. So we never received any discovery at all from Boeing. So that's part of the problem. In addition, of course, Boeing has tried to shift the burden or put the burden onto plaintiffs to suggest that we don't have enough evidence here. When, in truth of the matter, you're right, we do have a ton of evidence. In addition, Boeing has not provided any evidence whatsoever that any of this is untrue, or that there was any safe level of asbestos that Mr. Williams could have been exposed to. Let me ask you about how the district judge dealt with this. And you know the opinion better than I did. But it seems to me what the district judge was looking for was more direct evidence, which could tie into your claims about discovery, that the decedent was exposed to asbestos at that facility. He worked it, and he has details in here about where he worked. And he says a little bit about the remediation that was going on. It seems to me what the district judge was looking for was more specific evidence about where Mr. Williams was, when he was there. Makes clear there was asbestos throughout the facility during the period. There's no evidence the decedent was ever exposed to asbestos in any of the locations where he worked. Is that a problem of not having the discovery that you wanted? Is it a problem of the district judge demanding too much? Or is it a problem of the district judge not understanding what you did have? I think it might be all three, Your Honor. I thought I might help. First, I don't think that the district . . . First of all, Pennsylvania has a much higher standard for proving asbestos exposure than Louisiana. Let me ask you about the MDL. What was the MDL? What . . . Who was brought into the MDL? It was all asbestos cases at that time were sent to the MDL. And so we were just . . . Involving certain manufacturers, a certain . . . As far as I know, Your Honor, all asbestos matters in federal court were sent to that MDL. I don't think that it was specific to any manufacturer. Any idea how many claims were there, how many parties? Thousands? I would assume, but I don't know the answer to that. I'm sorry. I mean, part of this is I'm just wondering, God bless him, this district judge, how many cases he had. There's a little bit of cut and paste on these Lockheed Martin and Boeing decisions, as we would do, too, when the things are . . . have the same analysis. But, anyway, proceed on what you're saying is wrong with what the district judge . . . Because I do think the district judge wanted more than he had to tie Mr. Williams to what Boeing was responsible for in a specific building at a specific time. Right. I agree with that, Your Honor. He certainly seemed to want that. But, again, this is where we get into that issue of guard. That argument might make sense. Does he even talk about guard? He does not, Your Honor. That argument might make sense when you're talking about a specific supplier and to be able to say, you can't prove to me that Taylor's side and box materials were in this area of Building 350. But the truth is, no matter what asbestos was in Building 350, Boeing was responsible for it because Boeing had guard over the entire facility. And because Boeing was responsible for all of it, all we have to prove is that he was exposed to asbestos, which the Eastern District of Pennsylvania acknowledged. Especially if you go through and look, because he wrote different opinions on the different . . . for the different suppliers or the different defendants, you'll notice that he made different conclusions which contradict one another in some fashion and which beg the idea that there is a material issue of fact here that deserves to be resolved before the trier of fact rather than on summary judgment. I mean, the very simple fact that the trial court acknowledged that there was asbestos in the air conditioning system, that the entire air conditioning system would be . . . you know, everyone in the building would be exposed to this air conditioning system, acknowledged that our expert said that there was this higher than average background asbestos all of the time in these buildings, indicate that this is enough to prove, considering that Boeing has all of the responsibility for the facility, that Boeing should still be in this case. Let me ask you two questions about that. This issue was presented in Pennsylvania to the district judge of the Louisiana concept of liability. Secondly, is that opinion right without, if you did not have this concept of guard? I'm sorry, could you repeat that? Is the district judge correct if he was under interpretation generally of what liability would require absent this Louisiana concept? Well, Your Honor, the truth is we also have evidence that Boeing did direct, install, maintain those . . . So that's the answer. The answer would be, I don't know if it's yes or no, but you answered that it's wrong even there too. So how about you did present guard to the Louisiana district judge, I mean Pennsylvania district judge? We did, Your Honor. It's just, I think it's just a foreign concept and it wasn't addressed in the fashion that's consistent with Louisiana law. I mean Louisiana law is clear that if you have the custody of a thing, you are responsible for its vices and the damages that it causes to others. Anything else, Chairman? I do have a question. You know, I've been listening and I think most of these questions have gone to whether or not the grant of summary judgment was appropriate. Several issues were raised and I guess I'm concerned where if you weren't responding to questions about summary judgment, is there anything else you would have talked, any other issue that you wanted to talk about related to this case and what we're hearing today? Well, I mean obviously the summary judgment is. And the reason I ask it that way is oftentimes in oral argument I may be reading something and I think it's important and the lawyer stands up to argue and they choose not to even talk about that which means they didn't think it was that important and that matters to me because then it says to me, well maybe I'm over emphasizing something that's not that important. So, and obviously the summary judgment is important. If that's it, then that's it and tell me that and I'm done. Your Honor, thank you. I mean there are two additional pieces of that. One is that the dismissal for the timeliness of the relation back of the wrongful death claims. So that's one. We also consider that extremely important. And secondly, defense has made a lot of. Well, you talked about the reopening discovery which is separate from the summary judgment. Yes, sir. So that's two. I said summary judgment. You did talk about the reopening. We did talk about that. So the other is the relation back. Yes, and then finally the defense has made a lot of whether or not our expert is entitled to opine about contracts, specifically that preventative maintenance contract. What I'll note for the court and I don't think I did is that that was not a contract. It was a proposal. It was Boeing's personal summary of what Boeing had been doing in the past. And of course, the document speaks for itself. Mr. Parker is more than qualified just to read those assertions that Boeing has made and recite them for the court. But those are, in my opinion, the most important things in addition to the summary judgment. All right, counsel, thank you. Thank you all so much. If opposed to counsel needs it, she can have a little more time, but let's start at 20. Good morning, your honors. Brandy Mendoza Thibodeau for the Boeing Company. I wanted to first address some of the statements made by my opposing counsel to the panel. We heard a lot about her saying that Boeing leased the MAF or that there are documents somehow contained in the record that show Boeing had care custody control of guard over the MAF, all the MAF and all the buildings. And that simply doesn't exist. There's not one document that's been placed in the record by plaintiffs that says Boeing leased any part of the MAF. Well, does that get back to the argument throughout your brief that none of these are authenticated? Or are you saying there are no documents, period, that would show the relationship of Boeing to this building? Both, actually. First, they're unauthenticated, but even if they were- I'm troubled by that. I mean, obviously, discovery fits into part of this. And at least according to their brief, Boeing would not provide a corporate deponent where some of this could have been sorted out. I know, no doubt, I've got a defense to all of that. So putting aside whether they're authenticated or not, are you saying the relationship, and we can deal with whether we can consider the document, the relationship of Boeing to these buildings is not shown by anything in the record? That is correct, Your Honor. The documents that my opposing counsel spoke about, she talked about a proposal that was a bid to do work in 1976. We already know from the Lockheed Martin decision that there's no evidence of exposure prior to 1976. We don't have a deposition or testimony by Mr. Williams that is any part of the opposition to Boeing's motion for summary judgment. There's no testimony from Mr. Williams. We have an affidavit- There's a good reason why there's no testimony. But you're right, the evidence is lacking in that way. And we weren't in the case. We have an affidavit from George Stemley. Mr. Stemley first was identified after discovery closed. George Stemley meets Mr. Williams in 1976. We already know he was at the MAF, 76 to 78 per the socials, Mr. Williams, and then comes back again in 1980. Mr. Stemley meets him in 76. Now, the important thing is that in 1976, Boeing submitted, we assume the documents to be correct, a proposal to do work as a maintenance contractor. There's no evidence that proposal was ever granted. And in fact, there's a companion suit right now pending in the EDLA where other defendants are sued for allegedly the same exposure and doing work at the MAF. The second thing we have is a contract. It is a draft of a contract. No evidence that contract was ever awarded. In this other suit that you're talking about in the Eastern District, Louisiana. Yes, sir. It involves two alleged contractors at the MAF that allegedly- Williams is a plaintiff. Williams survivors are a plaintiff in that? Yes, yes, your honor. So there's another suit still going on involving Mr. Williams and other defendants, but regardless. Are you saying Boeing had nothing to do with MAF? I am suggesting that if you look at the proposals that Boeing did have a role in designing the Saturn V rockets in the 1960s, but that does not mean Boeing had a role in building any building where Mr. Williams might have been, that it had any control. In fact, none of those documents mentioned buildings 350 where he allegedly worked that whole time. And I know that the proposal was split into about five different sections. It's about 250 page document. Building 350 doesn't appear in there. Building 350- Boeing denies that it had any role in any of that? Correct. Boeing had no role at least with building 350, 351. Let me ask you, are you denying it or are you just taking the position there's no evidence? I'm denying it and I'm taking the position there's no evidence I'm doing- Is there anything from Boeing, like an affidavit saying we had no role? You would say it better than that because you would have written it, but is there something like that? There is not and I'll tell you why, because we didn't want to introduce new evidence at the summary judgment timeframe. When Boeing was brought into the case, it was about two months before the discovery cutoff. We filed a motion to dismiss. Plaintiffs did not oppose it. So Boeing was dismissed. Did the judge in Pennsylvania say anything about this, about Boeing has not been shown to have had any connection to the building? He did not and I think that is because he was focused on- He didn't say the opposite, does he? I think he was focused on no respirable asbestos fibers and no proof of exposure, which caused Mr. Williams's disease. But even if you look at the affidavit of Mr. Stimley and we say it's admissible and we take it for what it is, he talks about exposure, at least maybe his own work, around abatement work in 350 in the late 80s. There's not even an unexecuted contract that would suggest Boeing had anything to do with any building in the late 1980s. Boeing wasn't there. Some of the contractors in the other pending suit right now, which are sued for that abatement work, may be responsible, but it isn't Boeing. That's why it's not in the record. Does anything in the record show Boeing's role at all, even if it's not in the capacity of guard, whatever that might be, Judge Ingleheart will tell me for sure, but there's no- What does the record show Boeing's involvement with anything to do with what was going on at this facility at the relevant dates? The record doesn't have anything for the relevant dates. What the record shows is that prior to 1976, in the 1960s, when Boeing had involvement with the Saturn V rockets, it performed work in relation to facilities necessary for building of the rockets, contracting work for the rockets themselves. That would have been performed at this facility? Right, this facility has multiple, multiple, multiple buildings, so Boeing had one small role in the 1960s. There are rockets in there for NASA, so I guess that's pretty big, but specifically related to that role. On the moon, pretty big thing. To the Saturn V rockets. That was Boeing's job, and Boeing was involved with that.  In fact, I believe Mr. Parker, plaintiff's expert, noted MAF was built in the 30s, 40s, 50s, 60s. Different contractors keep building buildings, and a lot of these documents attached by plaintiffs show all of those various contractors, Mason, Rust, Global, Owl, but none of them show, even in the Boeing 1976 proposal, is any involvement with the buildings at issue here, or the air conditioning systems, or any installation or removal of any asbestos-containing product. Well, let's say this proposal that Boeing made on whatever relevant date is, that you said there's no evidence it was accepted. If it had been accepted, would that have placed Boeing in this sort of role at the buildings we're talking about? No, Your Honor. It would have placed Boeing in a role in the 1960s, when we know there's no evidence of exposure, because no one has seen Mr. Williams there until 76. It places them in the 1960s, performing work in relation to the Saturn rockets, and the specific area near the Saturn rockets, and it does not place them installing, ordering, manipulating any asbestos. There are a plethora of invoices plaintiffs submitted, showing various other companies selling asbestos, contractors using asbestos. Boeing is not in any of those invoices or documents. From your perspective, plaintiffs would know better, what caused Boeing to be sought to be added as a party? I believe that plaintiffs somehow believed, and I do not know why, that Boeing owned, because that is what they alleged, owned or leased to the entirety of the MAF. They come in late, and then leave for a while, and then come back in, but there was an allegation at the time, it's probably in the briefing, and I wasn't paying attention to this aspect of it, was there something that is quoted, cited, that indicated Boeing's involvement, errantly in your mind, that caused them to be added? I mean, you say they think that, but you don't have any representation about what could have caused that. I have no idea, because it's not in any document that I've ever seen, and I just, honestly, I can only speculate, Your Honors. I have no idea what would lead them to believe it, or even why my opposing counsel said today, well, clearly this shows Boeing leased the MAF. Those words are not anywhere in any document that is part of the record. Well, that's a fairly fundamental point to this lawsuit. Can you move beyond that point, in case we think there may be something else that does support the connection? Sure. You know, the problem is that even if there was something that could have supported a connection, again, anything showing connection stops before 1976, because there's no contract or document that says that Boeing ever, and to be perfectly honest, it's not in the record, Office of the Court, I'll say Boeing would not have had a document that says we had control over all of the MAF. Boeing would not have anything that says we'd had anything to do with the MAF in the 90s. It didn't, that was Lockheed Martin. Did you make this argument of whoever's representing Boeing, I believe you were representing Boeing at the time, indicate to the judge in Pennsylvania these arguments that there's no connection, no contract, no whatever, because the judge doesn't pick up on it. Well, as I understand it, to be perfectly candid, my law partner made the arguments to Judge Rubino, and as I understand it, I don't think there was a tremendous amount of oral argument. I think he already somewhat had his mind made up, and so I'm not sure for how long they got to argue how many points they got to get into. But there was a briefing. I'm sorry? There was a briefing to the district judge. It is in the briefing, yes. It is in the briefing? Yes, Your Honor. In Pennsylvania? Yes, Your Honor. Okay. That we did not lease or control the MAF, that we didn't install any asbestos, that it's not anywhere in the record. That's been argued over and over, and to very briefly touch if it's okay on the discovery issue, as I said, Boeing was brought in. Boeing moved to dismiss the claims. The motion for dismissal was not opposed, and so what happened is Boeing was dismissed, and then plaintiffs tried to serve discovery on us two weeks before the discovery deadline. We were dismissed from the case because our motion to dismiss had not been opposed, and so we filed a motion protective order, which was granted because we weren't parties to the case. Then plaintiffs moved to reconsider, and then we showed up back in the case, and by that point, Judge Angel said, you know what, we've been doing discovery for five years. No more. This is enough. And so that's why we did not readily offer depositions. We were not, it was two weeks before the discovery cutoff, and we were not a party to the case because of an unopposed motion. Do you have any response to the arguments about guard other than they don't apply to your client? If they did, if we somehow found, as mistaken as we might be, that Boeing did have a connection. Do you have anything to say about this whole concept of guard, if Boeing did have responsibility as facilities manager, facilities something, at this location in appropriate dates, what do you say to the Louisiana concept? Sure, Your Honor. I think that with respect to guard, I think guard would apply if Boeing was, number one, an operations manager, facilities manager with control over a building where Mr. Williams was, and during the course of that control, installed or manipulated an asbestos-containing product such that it got into his breathing zone, and such that it was- They don't have to do it. I mean, my understanding from your friend at the other table, I'm sure you have two friends over there, that would Boeing have to have done it, or would they just have had to have the role there, some contractor comes in and does whatever? I think it has to be more than a role because you have to be able to control it, and the thing with an asbestos-containing product is, if you install it, that doesn't necessarily cause harm, right, even Mr. Parker says that. There has to be a release of fibers.  There has to be a release of the fibers. A substantial exposure, that's what we hear about in cases like Rando, right, substantial exposure. Control would include hiring somebody to do maintenance work or installation or what have you. That's all encompassed within control. Again, we're assuming, we're getting to the next issue, but under this concept of guard, under the pre-1996 law, control includes control of agents who participate in maintenance. Isn't that true? I think that would be true if, in the hypothetical, Boeing, again, leased the facility for head back control. I'm assuming for argument's sake. You don't want us to forget, we got that. No, I just meant that if Boeing somehow controlled a contractor that installed asbestos, and again, the asbestos then has to be installed. Somehow, Boeing's in the chain of the installation. It gets disturbed, that specific asbestos. Mr. Williams brings it to such the extent that it is a substantial factor in causing his disease. I think we can get that far. The problem is that evidence doesn't exist. As Judge Rubino noted, there's actually no evidence that there was any substantial exposure to asbestos at the MAF. What Mr. Stanley says is, oh, I know he visited a couple buildings. He doesn't say when he was in the buildings, where he was in the buildings, if he's by anyone doing any work. That he worked in Building 350? Mr. Stanley said that he worked, that Mr. Williams had an office in Building 350. He doesn't say when the office was in Building 350, where it was, or if Mr. Williams was present when any of this abatement work took place. Not that Boeing has a connection to it, but the reality is, Mr. Stanley doesn't give us enough, and that is the fact witness. Has Boeing been sued by other employees of that facility? Boeing was actually sued in the Adado case, Ms. Saussure referenced, we were dismissed. I'm sorry, what? The Adado case, Ms. Williams, oh my goodness, I'm so sorry, Ms. Saussure referenced, Atlanta Adado, Boeing was voluntarily dismissed from that case because we did not have control over the buildings. Dismissed in Pennsylvania? Here. It was removed, remanded, and Judge Cates, Judge Sidney Cates, ended up dismissing us early. And those are the only two cases? To your knowledge, I'm not. We were named in the Ross case, too, we were dismissed pretty immediately from that one. Was Adado there at the same time as Mr. Williams? I believe so. At the same time. I believe so, I know she was in Building 350, I believe in the 1980s and 90s, trying to remember correctly. And there may have been other cases where I wasn't Boeing's counsel before my time, but those are the ones that come to mind. Anything else? Your Honors, I think that's all I have there. Unless there are any other questions for me, I'm happy to answer anything you may have. Is there anything you have prevented from arguing because of our questions? I'm just picking up on Judge Graves. It's such a wise question, I thought I'd try it myself. Thank you, Counsel. Thank you. Your Honors, I'd like to just note this document. Why don't you take your mask off? I mumble enough, but you're pretty well-spoken, but your mask, your fingers. I am actually soft-spoken, so I appreciate it. This is our Exhibit Number Five to our Motion for Summary Judgment, Your Honor. It's entitled, The Preventive Corrective Maintenance Minor Implant Construction and Rearrangement Alteration Services Technical Proposal written by Boeing to Martin Marietta, in which Boeing says that they, it specifically outlines exactly what Boeing did in the past. It is not, our reliance on this document is not about what they're planning to do from 76 forward, though that's certainly potentially possible because we know it did wind up getting the contract, but it specifically outlines all of the things that it did in the past, including taking care of all of the utilities, the air conditioning, the water services, which implicates all of those water lines, the 3.5 million square feet of covered space and 20 major buildings. In addition, I mean, this contract was so large that they also, Boeing was also responsible for all the roads, all the medical, all the transportation, all the food services, all the cafeterias, everything, all specifically outlined in here, Boeing's own words saying this is how well we have done it and these are all the things that we've fantastically done for you for the last 20 years. It's not about- If that's the proposal, you say that Boeing got the contract based on that proposal, as I understood your statement. Do you have summary judgment evidence of the acceptance and the entry into that contract? Not about the contract from 76 forward. I mean, the Adato case, the court has recognized that Boeing was the facilities manager thereafter. I think that the court could take judicial notice of the fact that Boeing was the facilities manager there, but I mean, it certainly explains Boeing's extreme fingers of involvement in every aspect. What period of time does that document come? So the document was drafted in 76. It goes back through Boeing's inception there in 63. So Boeing started there in 63, probably with the Saturn V rockets, but it was not just limited to that. Boeing was the facilities manager for all of the buildings and all of the, particularly importantly here, it claims responsibility for the air conditioning system, which is what we know was completely full of friable, deteriorating, airborne asbestos fibers, excuse me, that Mr. Williams was exposed to. They claimed the responsibility. So I'm not sure how- So let me make sure I understand what you say is in this document. This is a proposal to get a new contract, but in that proposal, it sets out what it's done in the past for the party with whom it wants to contract. And that's where this information you're telling us about their fingerprints being everywhere comes from. Absolutely. And there are, in fact, three different contracts that Boeing had at the MAF, which are specifically laid out in here. I'll say that again. They had what? There's three different contracts over time that Boeing was party to at the- Successive contracts or overlapping? Two were successive, one was overlapping, and it outlines all the different things that it did pursuant to those contracts for all of that time, and then asks for the contract going forward. So this suggestion that Boeing was not, did not have its fingers throughout the entire facility is entirely disingenuous. Were you entitled to attorney-client privilege or whatever in answering this question? But I asked Boeing's lawyer, what caused Boeing to be added as a party? What piece of information caused Boeing to be added as a party? This information, Your Honor. And that came up during discovery that was going on? When we were able to go into the Lockheed Martin document repository, or I guess at the MAF. I'm not sure that Lockheed Martin was still in charge of it. It makes me think of a big file room that you went to and started looking at all these old documents. Is that what we're talking about? Absolutely. It was a very large file room with the old library wheels and all sorts of documents that were not labeled, just boxed and shoved up into these, you know, the shelves. And we just went through document after document, which is why some of the documents are incomplete. But they're certainly more than enough to survive summary judgment and to suggest that Boeing had the care, custody, and control of the facility, that there was asbestos in the facility. And based on the only Louisiana Supreme Court case that we have referenced in here, where the Rando case clearly demonstrates that Louisiana is in any exposure jurisdiction for, or each and every exposure jurisdiction for exposure to asbestos that causes mesothelioma, we more than meet that standard to keep Boeing in this case and to survive summary judgment. Counsel, why don't you have a seat? I'm gonna go out of regular order. You can get back up in a moment. I'm gonna ask Ms. Thibodeau, do you have a response to what we just heard? Because it seems quite central to your argument. And you, of course, didn't respond to us because it hadn't been said yet. What's the significance of this document in your view? Yes, Your Honor. Very briefly. The document that Ms. Ocier is referencing, 1976 proposal, does not say, I know it's a pain, it can be a pain to read every word, but it doesn't say that Boeing had any responsibility for all of the buildings. You've talked about documents like that before, and I assume you were talking about that one too. So it is your position, and you said it's not so much an affirmative statement in evidence, it's just the absence of evidence that Boeing ever undertook this role at these later dates. Correct, and in fact, if you look at the documents, even the draft documents, it actually lists buildings that Boeing did have some responsibility for, if they're true, and building 350 and 351, and most of those buildings are not on there, and none of them say Boeing installed any asbestos or manipulated any asbestos or had anyone else install any asbestos. Building designations continue through time. I mean, 350 is the right number through all this 20, 30 years. To the best of my knowledge, yes, Your Honor. There are buildings that go from the 100s all the way to the 400s, and I don't believe that any of them have ever changed their designation. All right, counsel, thank you. Thank you. And you always get to close if you want to respond to that. All right. Thank you both. Certainly an unfortunate, in two general words, sad situation for Mr. Williams. It's an important case, and we will give it careful consideration. This panel is adjourned. Thank you.